TAYLOR *v.* MICHIGAN PUBLIC UTILITIES COMMISSION.

GAS—EXPIRATION OF FRANCHISE—FIXING RATES—POWER OF PUBLIC UTILITIES COMMISSION ON PETITION OF CONSUMER—MUNICIPAL CORPORATIONS.

Where the franchise contract between the city of Grand Rapids and the gas company had expired, and negotiations were being had with a view of arbitrating the rate preliminary to the granting of a new franchise, mandamus will not issue to compel the public utilities commission to fix the rates to be paid for gas by consumers, on petition of a consumer on behalf of himself and others like situated: Per WIEST, STONE, BIRD, and STEERE, JJ., on the ground that the commission could act only upon petition by the municipality. Per FELLOWS, C. J., and SHARPE, CLARK, and MOORE, JJ., on the ground that mandamus is a discretionary writ, and, upon the record, the commission should not be forced to act, although, in its discretion, it had the power to do so.

Mandamus by Claude O. Taylor to compel the Michigan public utilities commission to fix the rates to be paid for gas in the city of Grand Rapids. Submitted October 11, 1921. (Calendar No. 29,681.) Writ denied February 8, 1922.

*Claude O. Taylor, in pro. per.*

*Merlin Wiley,* Attorney General, and *Clare Retan,* Assistant Attorney General (*S. F. Master,* of counsel), for defendant.

*Ganson Taggart,* City Attorney, for city of Grand Rapids.

WIEST, J. Plaintiff, in behalf of himself and others like situated, by petition invoked the Michigan public utilities commission to fix the rate to be paid for gas

by consumers in the city of Grand Rapids, on the ground that the franchise contract between the city and the gas company had expired, and without right the company was exacting an excessive rate. The commission declined to act on the ground that, the franchise having expired, the statute provides that the jurisdiction of the commission can only be invoked by the municipality and not by consumers, residents of the city. We are asked to issue the writ of mandamus compelling the commission to assume jurisdiction and to act upon the petition.

The sole question presented is:

"Whether the Michigan public utilities commission possesses the authority and power, under Act No. 419, Pub. Acts 1919, to receive said petition, entertain jurisdiction of the subject-matter, proceed with a hearing and make an effective order or decree, both temporary and permanent, with respect to the gas rate in the city of Grand Rapids."

The statute provides:

"SEC. 4. In addition to the rights, powers and duties vested in and imposed on said commission by the preceding section, its jurisdiction shall be deemed to extend to and include the control and regulation, including the fixing of rates and charges, of all public utilities within this State producing, transmitting, delivering or furnishing gas for heating or lighting purposes for the public use. Subject to the provisions of this act the said commission shall have the same measure of authority with reference to such utilities as is granted and conferred with respect to railroads and railroad companies under the various provisions of the statutes creating the Michigan railroad commission and defining its powers and duties. The power and authority granted by this act shall not extend to, or include, any power of regulation or control of any municipally owned utility; and it shall be the duty of said commission on the request of any city or village to give advice and render such assistance as may be reasonable and expedient with respect

217 Mich.—26.

to the operation of any utility owned and operated by such city or village. In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township. It shall be competent for any municipality and any public utility operating within the limits of said municipality, whether such utility is operating under the terms of a franchise or otherwise, to join in submitting to the commission any question involving the fixing or determination of rates or charges, or the making of rules or conditions of service, and the commission shall thereupon be empowered, and it shall be its duty to make full investigation as to all matters so submitted and to fix and establish such reasonable maximum rates and charges, and prescribe such rules and conditions of service and make such determination and order relative thereto as shall be just and reasonable. Such order when so made shall have like force and effect as other orders made under the provisions of this act. In any case where a franchise under which a utility is, or has been, operated, including street railways shall have heretofore expired or shall hereafter expire, the municipality shall have the right to petition the commission to fix the rates and charges of said utility in accordance with the provisions of this act, or to make complaint as herein provided with reference to any practice, service or regulation of such utility, and thereupon said commission shall have full jurisdiction in the premises.

"SEC. 8. Upon complaint in writing that any rate, classification, regulation or practice charged, made or observed by any public utility is unjust, inaccurate, or improper, to the prejudice of the complainant, the commission shall proceed to investigate the matter."
*    *    *

The Michigan public utilities commission is a creature of the statute, has no inherent or common-law power, and its jurisdiction in any instance must affirmatively appear in the statute before it can be invoked or exercised. *Expressio unius est exclusio alterius* has been a long time legal maxim and a safe

guide in the construction of statutes marking powers not in accordance with the common law.

"No maxim of the law is of more general or uniform application, and it is never more applicable than in the construction and interpretation of statutes." Broom's Legal Maxims, p. 663, cited in *Whitehead* v. *Cape Henry Syndicate*, 105 Va. 463 (54 S. E. 306).

When what is expressed in a statute is creative, and not in a proceeding according to the course of the common law, it is exclusive, and the power exists only to the extent plainly granted. Where a statute creates and regulates, and prescribes the mode and names the parties granted right to invoke its provisions that mode must be followed and none other, and such parties only may act. 2 Lewis' Sutherland Statutory Construction (2d Ed.), §§ 491-493. The provisions of this statute cannot be enlarged by implication as they expressly exclude any such intendment. The maxim *expressum facit cessare tacitum* is also of applicability here. This law designates the actors, and when a law designates the actors none others can come upon the stage. The words of the statute are restrictive and the designation therein of the municipality as the party to give the commission jurisdiction operates to the exclusion of plaintiff. The matter falls squarely within the provision of the statute granting the exclusive privilege to the municipality to petition the commission to fix the rates and charges in case the franchise of the company has expired.

We held in *Home Telephone Co.* v. *Railroad Commission*, 174 Mich. 219, that:

"Grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference."

We are of the opinion that, the franchise of the utility company having expired, the commission could act only upon petition by the municipality.

The writ is denied, but the question presented being of public interest no costs are awarded.

STONE, BIRD, and STEERE, JJ., concurred with WIEST, J.

FELLOWS, C. J. I agree that the writ should be denied. I do not agree that the Michigan public utilities commission is so limited in power as my brother WIEST concludes it is. I recognize that the commission is created by statute and to the statute creating it it must look for its power. Its power must be specifically conferred or must be necessarily incident to the specific grant. I am not persuaded that the statute is ambiguous, but if it is open to construction I am not impressed that we should limit ourselves in seeking the legislative intent to the use of two legal maxims however valuable aids they may be in the construction of a statute. If the statute is open to construction we must seek to discover the legislative intent, and all aids available in such search should be called to our assistance. In *Williams* v. *Mayor, etc., of Detroit*, 2 Mich. 560, 563, it was said:

"It was strongly urged by the counsel for the complainant, on the argument of this cause, that the special enumeration of powers in article 14 of the Constitution, entitled 'Finance and Taxation,' exclude all others that might be implied, and that the maxims of the law, *expressio unius est exclusio alterius*, and *expressum facit cessare tacitum*, are strictly applicable in the construction of the Constitution with regard to the powers of the legislature over the subjects of taxation. That certain legal maxims or rules of construction, which have been found generally applicable, afford important aid in arriving at the intention of those who framed the law, every lawyer will admit, but that there are some instruments or laws to which such maxims cannot be strictly applied, without doing manifest violence to the plain intent of the framers of the law, is also a matter of common experience."

I shall not review the legislation creating the interstate commerce commission and the various State commissions. Primarily this legislation was brought about by the discriminatory rates, services and practices of the carriers advantageous to favored shippers. But the powers of these commissions have gradually been broadened to include general regulation of public utilities. The history of this legislation shows not a contraction of the powers of the commissions but an extension of them. The present Michigan public utilities commission created by Act No. 419, Pub. Acts 1919, took over all the powers of the former Michigan railroad commission except as otherwise provided in the act creating it. It extended the jurisdiction of the commission to bring within its regulatory power gas heating and lighting companies. The former Michigan railroad commission as to the utilities it regulated was not limited in its action exclusively to cases brought before it on complaint but could act of its own motion (2 Comp. Laws 1915, §§ 8130 (*e*), 8133 (*f*), 6699). Taking into consideration the fact that there has been a continued broadening of the powers of the commissions, including our own, it is difficult for me to conceive that it was the legislative intent to so circumscribe the power of the commission as to prohibit it from acting under the facts disclosed by this record except on the application of the municipality. In permitting the municipality to institute proceedings, I do not conclude that it was the legislative intent to exclude all other proceedings. Such a construction would permit a gas heating and lighting company whose franchise had expired to operate at will without regulation as to rates, service or discrimination unless the municipality petitioned the commission to take jurisdiction. I cannot feel that the language used in this act should be so construed or that such was the legislative will.

'While I am persuaded that the commission had the power to accept and act upon the petition filed with it by the plaintiff and others, I do not think this court should upon the facts appearing in this record compel such action by mandamus, a discretionary writ. It appears from this record that the city of Grand Rapids and the gas company were negotiating at the time this application was filed with a view of arbitrating the rate, preliminary to the granting of a new franchise. These negotiations were being conducted in good faith, and I think the commission might, in its discretion, withhold action until the city and the gas company had an opportunity to conclude their negotiations.

I therefore concur in the result reached by Justice WIEST that the writ should be denied.

CLARK, SHARPE, and MOORE, JJ., concurred with FELLOWS, C. J.