424

5-734                                          283 S. W. 2d 123

Opinion delivered October 24, 1955.

*Bailey, Warren & Bullion,* for appellant.

*Lasley, Spitzberg, Mitchell & Hays* and *Moore, Burrow, Chowning & Mitchell,* for appellee.

ED. F. McFADDIN, Associate Justice. The question to be decided is whether the Arkansas Public Service Commission (hereinafter called "Commission") has the power to prohibit the Arkansas Louisiana Gas Company (hereinafter called "Appellee") from selling and installing air-conditioning equipment in competition with appellants. The Commission held itself to be without power to make such order; the Circuit Court agreed with the Commission; and the case is here on appeal.

In May 1954 the Associated Mechanical Contractors of Arkansas, Refrigeration and Air-Conditioning Division (hereinafter called "appellants"), filed before the Commission a complaint against appellee. The complaint

alleged: that the appellants constituted a mercantile association in the State of Arkansas; that § 73-216, Ark. Stats., allowed any "mercantile association" to file a complaint before the Commission against any public utility involving the "furnishing of service"; that appellee, as a public utility engaged in the sale of gas, was under the jurisdiction of the Commission (§ 73-218, Ark. Stats.); and that the Commission had the power to ascertain and fix the "service to be . . . furnished" by any utility. The complaint (therein referring to appellants as "complainants" and appellee as "defendant") contained the following allegations:

"The defendant for a number of years has established and followed a practice of dealing in the retail sale and installation of appliances, including air-conditioning units and equipment. . . . Complainants assert that the merchandising of fixtures and appliances is properly a non-public utility operation. Defendant occupies the favored position of a protected monopoly in its public utility operations with an assured profit, part of which profit it is using in a destructive competition with private enterprise. It has sustained a loss of approximately seventy thousand dollars for each of the years 1952 and 1953 in said non-public utility operations through its practices of underbidding its business competitors. . . ."

The prayer of the complaint was that appellee be prohibited from engaging in private business. Appellee filed before the Commission a motion to dismiss, which said:

"(1) This Commission has no jurisdiction of the subject matter of the complaint.

"(2) This Commission has no jurisdiction or power to issue cease and desist order as prayed for by complainants."

As aforesaid, the Commission sustained the motion to dismiss.

I. *Jurisdiction of the Commission.* The threshold question is whether the Commission has jurisdiction to grant relief in a case like this one. In the case of *City of Ft. Smith* v. *Dept. of Pub. Utilities,* 195 Ark. 513, 113 S. W. 2d 100, we said of the extent of jurisdiction of the Commission:

"The Department is an administrative body, created by the Legislature, and, as such, it may perform only such duties and exercise such jurisdiction *delegated to it by the Legislature* as the law-making body itself could constitutionally exercise."[1] (Italics our own.)

Therefore we search our Statutes to see the power of the Commission. Over the years we have had a series of Legislative enactments which have been designed to regulate public utilities. Without going too far back into history or attempting to give all the Acts and amendments, we begin with Act No. 571 of 1919, which created the Arkansas Corporation Commission; Act No. 124 of 1921 amended the 1919 Act; Act No. 72 of 1933 created the Fact Finding Commission; Act No. 324 of 1935 was a comprehensive Act[2] that created the Department of Public Utilities; and Act No. 40 of 1945 consolidated the Arkansas Corporation Commission and the Department of Public Utilities into the "Arkansas Public Service Commission," which is the present name of the agency.

We give the foregoing list of some of the Acts for the purpose of pointing out that in Section 11 of Act 571 of 1919 there was a paragraph which said:

"The Commission shall have general supervision of all persons, firms or corporations having authority . . . to lay . . . pipes . . . for the purpose of furnishing and distributing gas. . . ."

---

[1] The quoted language is in accord with the holdings of other courts on the same question, some of which are: *West* v. *Sun Cab Co.* (Md.), 154 Atl. 100; *State ex rel. Utility Dist.* v. *Dept. of Pub. Serv.* (Wash.), 150 Pac. 2d 709; and *Taylor* v. *Mich. Pub. Util. Comm.* (Mich.), 186 N. W. 485.

[2] Sec. 19 (6) of the Act No. 324 of 1935 transferred to the Department of Public Utilities the powers of the Arkansas Corporation Commission over utilities.

The quoted "general supervision" paragraph in the 1919 Act was *eliminated* by § 8 of the Act No. 123 of 1921;[3] and we do not find any such "general supervision" language in any of our subsequent legislation. Therefore, it seems clear that the Arkansas Public Service Commission does not have "general supervision" over *all* of the dealings of a corporation that is a public utility, but only has *supervision* within the Legislative grant of those dealings wherein the corporation, in fact, acts as a *public utility*.

Just as a municipal corporation may act in either a governmental capacity or a proprietary capacity,[4] so also a public service corporation may act in some matters of business as a private corporation. In 73 C. J. S. 1003 cases are cited to sustain this rule:

"A public utility may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person. The fact that a business or enterprise is, generally speaking, a public utility does not make every service performed or rendered by it a public service, with the consequent duties and burdens, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person."

Appellee's charter gives it the power to sell equipment, so it is not claimed that appellee is acting *ultra vires;* besides, injunction against *ultra vires* acts of a corporation is a matter for a court and not a point on which the Commission might bottom its jurisdiction.[5] Whether the Legislature has the power to prohibit a public utility from acting in a private capacity is a question not before us; so we need not consider the arguments contained in the case of *Capitol Gas & Elec. Co.* v. *Boynton,* 137 Kan. 717, 22 Pac. 2d 958. The basis for our con-

---

[3] The fact of this elimination is mentioned in the annotation following § 73-123, Ark. Stats.

[4] See *Town of Searcy* v. *Yarnell,* 47 Ark. 269, 1 S. W. 319; and *Arkansas Valley Compress* v. *Morgan,* 217 Ark. 161, 229 S. W. 2d 133.

[5] As to injunction against *ultra vires* acts, see generally 32 C. J. 234 and 43 C. J. S. 605.

clusion is that our present Statutes do not give the Commission authority to act in a case like this one [6] involving the non-public utility business of a corporation.

II. *Losses in Private Business Matters.* Finally, appellants urge that the appellee is sustaining an annual loss in this private business of selling air-conditioning equipment, and that this loss is carried into the rate base for the public utility charges that the appellee makes. Such an argument is a matter that addresses itself to the Public Service Commission in fixing a rate base; but such argument cannot be used to confer jurisdiction on the Commission in a case like the appellants now have before us.

Affirmed.

---

[6] Cases from other Public Service Commissions are in accord with the holding of the Arkansas Public Service Commission on this point. See *City Ice & Fuel Co.* v. *Consolidated Edison Co. (N. Y. Dept. of Public Service 1939)*, 29 P. U. R. (N. S.) 193; *Master Plbrs. Assn.* v. *Brockton Gas Lt. Co. (Mass. Dept. of Public Utilities 1935)*, 36 P. U. R. (N. S.) 364; *In Re Milwaukee Gas Lt. Co. (Wis. P. S. Com. 1942)*, 44 P. U. R. (N. S.) 194; and see also *In Re City Ice & Fuel Co. (N. Y. Sup. Ct. App. Div. 1940)*, 37 P. U. R. (N. S.) 218 and 23 N. Y. S. (2) 376.